UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KEVIN LUCAS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 23-225WES |
| | : | |
| MERRICK B. GARLAND, et al., | : | |
|     Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On June 1, 2023, *pro se*[1] Plaintiff Kevin Lucas, a former detainee at the Wyatt Detention Facility ("Wyatt") and now a resident of Connecticut, filed this civil action against the Attorneys General of the United States (Merrick Garland) and of Rhode Island (Peter Neronha), the United States Marshal of Rhode Island (Wing Chau), the Wyatt and five of its employees/representatives (the former warden, Daniel Martin; a grievance coordinator, Yaniris Paulino; a physician, Dr. Edward Blanchette; a nurse practitioner, Holly Fernandes; and the health service administrator, Ron LaBonte). All are sued in both their individual and official capacities. In reliance on 42 U.S.C. § 1983, but claiming that all Defendants were acting under color of federal law, Plaintiff seeks money damages based upon his receipt of what he asks the Court to declare was constitutionally inadequate health care in violation of the Fifth, Eighth and Fourteenth Amendments.

Factually, Plaintiff alleges that, during his pretrial detention at the Wyatt, he reinjured his left shoulder rotator cuff (on which he had previously had surgery) in December 2020, but that the Wyatt did not provide him with the cortisone injection and physical therapy that an outside

---

[1] Plaintiff's pleading has been reviewed with the leniency required for any *pro se* litigant. Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000).

orthopedic surgeon (to whom the Wyatt had sent him) recommended (but did not order or prescribe) on August 2, 2021. Plaintiff contends that some of Defendants were aware of the recommendation but delayed providing the treatment for seven months until March 4, 2022, when Plaintiff was transferred to a Federal Bureau of Prisons ("FBOP") facility in New York. Plaintiff also claims that FBOP personnel told him that the Wyatt refused to release his medical record to the FBOP facility and that the FBOP personnel refused to make a second request. Subsequently (the date is not disclosed in the complaint), Plaintiff was released from custody and, by the summer of 2022, was offered and/or was receiving the recommended treatment. He was not a prisoner at the time of the filing of the complaint.

Plaintiff's complaint[2] was accompanied by an application to proceed *in forma pauperis* ("IFP"), which has been referred to me. While the IFP application establishes financial eligibility, based on this referral, I am required to screen the complaint pursuant to 28 U.S.C. § 1915(e)(2). Rondeau v. State of New Hampshire, 201 F.3d 428, 1999 WL 1338348, at *1 (1st Cir. Feb. 29, 1999) (per curiam) (table decision) (screening for non-prisoner plaintiff pursuant to 28 U.S.C. § 1915(e)(2)). This requires the Court to determine *inter alia* whether the complaint is sufficient to state a plausible claim against the named Defendants based on delayed medical treatment. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

I. **Background**

From February 2020 until March 4, 2022, Plaintiff was detained at the Wyatt, a private pretrial detention facility operated under contract with the United States Marshals Service

---

[2] Subsequent to filing his initial complaint, Plaintiff filed a motion for leave to file an amended complaint. ECF No. 3. The motion was granted. Text Order of June 30, 2023. The Court treats ECF No. 3-1 as the operative pleading under review.

("USMS"),[3] on the order of a federal magistrate judge in the District of Connecticut, while awaiting trial on the federal charge of trafficking in heroin. See United States v. Lucas, 3:19-cr-00219-JCH, ECF No. 51 (D. Conn. Feb. 26, 2020). Prior to being detained, Plaintiff had had surgery in Bridgeport, Connecticut, to repair a rotator cuff injury. ECF No. 3-1 ¶ 16. While detained, in December 2020 Plaintiff reinjured the shoulder. Id. ¶ 17.

Wyatt staff arranged for an x-ray, id. ¶¶ 18-19, and issued a sling for Plaintiff to use. Id. ¶¶ 20, 27 & Ex. C. On March 12, 2021, Defendant Blanchette ordered Plaintiff to be sent for an MRI, which order request was forwarded to USMS; the request was approved and the MRI was performed on June 23, 2021. Id. ¶ 22 & Exs. A, A1, B, E, E1, H. With USMS approval, id. Exs. F1, H1, Wyatt staff arranged for an orthopedic consultation; on August 2, 2021, Plaintiff was examined by an outside orthopedic surgeon, Dr. David Cicerchia. Id. ¶ 23 & Ex. F. According to Dr. Cicerchia's note, he reviewed the MRI with Plaintiff and noted "no evidence of recurrent full-thickness tear" and "no evidence of labral tear," but "[i]mpingement syndrome of left shoulder" and "[t]raumatic incomplete tear of left rotator cuff." Id. Ex. F. Dr. Cicerchia "recommended cortisone injection and formal physical therapy but this needs to be approved before performed . . . . He will call if it is approved." Id. ¶ 23 & Ex. F (emphasis added). Dr. Cicerchia's note further indicates that "[n]o orders of the defined types were placed in this encounter." Id. Ex. F. The note contains no directive regarding the timing for treatment, except that it should be after approval is procured. A note dated August 22, 2021, confirms that "[n]o urgent surgery needed" and "[r]ec: cortisone injection and P.T." Id. ¶ 24 & Ex. F1.

While at the Wyatt, Plaintiff did not receive the recommended injection and physical therapy despite, as he alleges, "constant pain." Id. ¶¶ 25-26. Plaintiff alleges that the Wyatt's

---

[3] See Glennie v. Garland, C.A. No. 21-231JJM, 2023 WL 2265247, at *14 & nn.21, 22 (D.R.I. Feb. 28, 2023).

3

physician and nurse practitioner, Defendants Blanchette and Fernandes, were aware of his MRI and were aware of an alleged medical principle that "cartilage lost bone displacement leading to osteoarthritis and other complications of delayed treatment that would lead to permanent damage of the left shoulder rotator cuff for the lack of the prescribed treatment." Id. ¶¶ 28-31. He also claims that they disregarded and interfered with Dr. Cicerchia's recommended treatment. Id. ¶¶ 54-55.

In November 2021, Plaintiff filed a grievance about the Wyatt's failure to offer him a cortisone injection and physical therapy. ECF No. 3-1 ¶¶ 32-33 & Ex. G. On December 28, 2021, Defendant LaBonte denied the grievance because the requested care had not been denied by USMS; this response urged Plaintiff to "utilize the in process tools to accomplish your desired information gathering" and that "[w]e will reach out to the USMS to determine next steps." Id. ¶ 38 & Ex G2. The complaint alleges that Defendant LaBonte failed to "reach out" to USMS. Id. ¶ 62. Plaintiff accuses the former warden, Defendant Martin, of denying the appeal from Defendant LaBonte's denial of his grievance without stating a reason other than that he agreed with the reason in Defendant LaBonte's denial. Id. ¶ 65 & Ex. G3. The complaint also alleges that errors were made with the completion and processing of the grievance forms by Defendant Paulino[4] and LaBonte,[5] such as omitting/deleting the grievance case number. Id. ¶¶ 34-39, 43-45, 58-62.

---

[4] Plaintiff accuses Defendant Paulino of altering a copy of the grievance form and illustrates this conduct by comparing the version of the form that does not yet reflect the entry of the Wyatt's response with the version that contains the entry of the Wyatt's response; the difference appears to be the deletion of the grievance number. ECF No. 3-1 ¶¶ 42-45, 81 & Exs. G, G5, G6. The complaint does not provide any facts that plausibly suggest that this alteration was in furtherance of actions to deprive Plaintiff of his constitutional rights. Plaintiff also accuses Defendant Paulino of requesting an extension to respond to the grievance, although the response to the grievance issued twenty-four hours after the extension was approved. Id. ¶¶ 36-38, 82 & Exs. G1, G2.

[5] Plaintiff also includes the puzzling accusation that Defendant LaBonte failed to provide a reason for denying Plaintiff's grievance. ECF No. 3-1 ¶ 61. This allegation is squarely contradicted by the attached memorandum of response, which states the reason. Id. Ex. G2. I have disregarded this unsupported allegation.

Plaintiff alleges that the U.S. Marshal for Rhode Island, Defendant Chau, and the former Wyatt warden, Defendant Martin, were aware of the orthopedic surgeon's recommendation for a cortisone injection and physical therapy. Id. ¶¶ 46, 47. Beyond the conclusory assertion that they acted with deliberate indifference, and Defendant Martin's denial of the grievance appeal, there are no factual allegations about Defendants Chau and Martin. There are no factual allegations at all regarding U.S. Attorney General Garland or Rhode Island Attorney General Neronha. Id. ¶¶ 67-68, 86-87.

In March 2022, Plaintiff was transferred to another FBOP detention facility in New York. Id. ¶¶ 48-49. He alleges that the Wyatt generally and Defendant LaBonte specifically failed to transmit his medical records to that facility and that staff at that facility refused to ask for them again. ECF No. 3-1 ¶¶ 49-53, 83. However, while Plaintiff alleges that he signed a medical release form, id. ¶ 50, his exhibits show only a medical release form that is unsigned. Id. Ex. I2. This claim is based on what Plaintiff was told at the New York facility, id. ¶¶ 49-51, 53; he also alleges that in April 2022, his shoulder was x-rayed again at the New York facility, id. ¶ 52, as well as that the New York facility approved the use of a "[b]lue [s]ling," as had been prescribed at the Wyatt, id. Exs. I1, I3.

Subsequently, in August 2022, Plaintiff's attachments to the complaint indicate that he had been receiving medical treatment in the community in Bridgeport, Connecticut, including physical therapy (which "give[s] him some relief") and that he was offered steroid injections but refused at least once. ECF No. 3-1, Ex J ("Patient was offered corticosteroid injection last visit but refused."). In November 2022, Plaintiff was discharged from physical therapy because he "[m]et goals." Id. Ex. J2. These records do not reflect any "complications of delayed treatment"

5

or "permanent damage of the left shoulder rotator cuff for the lack of the prescribed treatment." See ECF No. 3-1 ¶¶ 30, 31.

Plaintiff asks the Court to declare that Defendants violated his constitutional rights; for relief, he asks for an award of compensatory and punitive damages, as well as costs and attorney's fees (although he is *pro se*). Id. at 9-10. There is no claim for an injunctive remedy.

## II.   Standard Of Review and Analysis

"The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2) . . . is identical to the standard used when ruling on a Rule 12(b)(6) motion." Diaz v. Rhode Island, C.A. No. 21-208-JJM-PAS, 2021 WL 2000478, at *1 (D.R.I. May 19, 2021). "To state a claim on which relief may be granted, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. at *2 (internal quotation marks omitted). The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Silva v. Rhode Island, C.A. No. 19-568JJM, 2020 WL 5258639, at *2 (D.R.I. Sept. 1, 2020) (internal quotation marks omitted), adopted by Text Order, (D.R.I. Sept. 16, 2020). After the Court has divided "the plausible sheep from the meritless goats," id. (internal quotation marks omitted), it must then determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks omitted). To survive screening, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, beyond "a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678.

In addition to alleging facts sufficient plausibly to establish that he was deprived of rights guaranteed by the Constitution, Plaintiff's complaint must also clear a second hurdle – a suit for money damages based on a constitutional injury may proceed only to the extent that the law creates a vehicle for pursuing such a claim against the named Defendants. See Glennie, 2023 WL 2265247, at *5. For actions under "Color of Federal Law," as Plaintiff's complaint alleges, ECF No. 3-1 ¶ 14, 42 U.S.C. § 1983 is not available as a vehicle for asserting a claim. Glennie, 2023 WL 2265247, at *5, 15-16. Rather, the only vehicle for Plaintiff to assert these claims is the limited implied right of action to seek money damages in certain circumstances that was judicially created by Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), and progeny. See Glennie, 2023 WL 2265247, at *5.

  A. Has Plaintiff Plausibly Alleged Constitutional Deprivations?

Because Plaintiff was a federal pretrial detainee alleging harm under color of federal law, his right to constitutionally adequate health care arises pursuant to the Due Process Clause of the Fifth Amendment. Laurent v. Edwin, 528 F. Supp. 3d 69, 85 (E.D.N.Y. 2021); Karmue v. Remington, Civil No. 17-cv-107-LM-AKJ, 2020 WL 1290605, at *13 (D.R.I. Mar. 18, 2020). The "more robust body of Eighth Amendment jurisprudence is relied upon by courts analyzing Due Process Clause claims of inadequate health . . . care . . . under the Fifth . . . Amendment[]." Glennie, 2023 WL 2265247, at *6. To sustain such a claim, Plaintiff must satisfy a two-prong test. Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (per curiam).

First, the complaint must plausibly allege, as an objective matter, that Plaintiff had a serious medical need that received inadequate care. Id. A serious medical need is one that "has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation

7

marks omitted). Adequate medical care is not the most sophisticated care available; nor is it care that is ideal, or of the prisoner's choosing. Kosilek v. Spencer, 774 F.3d 63, 82, 85 (1st Cir. 2014). When the claim is based on delayed medical treatment, the pleading must plausibly allege that the treatment was ordered or prescribed and that the delay itself posed substantial risk of injury. Glennie, 2023 WL 2265247 at *7. The emphasis is on seriousness – the Constitution proscribes treatment that shocks the conscience. Kosilek, 774 F.3d at 83. Inadvertence or negligence is not enough to sustain a constitutional claim. Leavitt v. Corr. Medical Servs., Inc., 645 F.3d 484, 497-98 (1st Cir. 2011).

    The second prong is subjective. Abernathy, 984 F.3d at 6. It requires that the pleading allege facts sufficient to demonstrate that each defendant was aware of the serious need for prescribed treatment, or of facts from which the need could be inferred, and still failed to provide treatment. Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003). Thus, a prisoner can show wanton disregard by presenting evidence of "denial, delay, or interference with prescribed health care." Reaves v. Dep't of Corr., 195 F. Supp. 3d 383, 416 (D. Mass. 2016) (internal quotation marks omitted). Deliberate indifference requires a showing of "greater culpability than negligence but less than a purpose to do harm . . . showing a conscious failure to provide medical services where they would be reasonably appropriate." Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011). To show such a state of mind, the plaintiff must allege facts permitting the inference that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented it. Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2008). For defendants who do not provide hands-on medical treatment, this inquiry must examine whether, as to each, they directed or otherwise had actual or constructive knowledge of inadequate care provided by others. Guadelupe-Baez v. Pesquera,

819 F.3d 509, 515 (1st Cir. 2016); Silva v. Clarke, C.A. No. 19-568JJM, 2022 WL 1091336, at *13 (D.R.I. Apr. 12, 2022). That is, constitutional liability is premised on the defendant's own acts or omissions despite actual or constructive knowledge of the grave risk of harm evincing reckless or callous indifference to constitutional rights. Silva, 2022 WL 1091336, at *13. If a prisoner has received some medical attention and the dispute is over the adequacy of the treatment "federal courts are generally reluctant to second guess medical judgments." Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981).

Several of Plaintiff's claims may be swiftly disposed of because the complaint lacks facts that plausibly allege that the specific defendant acted with the requisite deliberate indifference to a "substantial risk of serious harm." Barrett, 292 F. Supp. 2d at 285. First, Plaintiff's claims against Defendants Garland and Neronha[6] are utterly unsupported by any facts at all and should be dismissed. Second, Plaintiff's claims against Defendant Paulino, the Wyatt's grievance coordinator, allege only an error and some confusion in dealing with a grievance form; this does not conceivably amount to deliberate indifference to a serious constitutional deprivation. All claims against her should be dismissed. Third, Plaintiff's claims against Defendants Chau and Martin are based solely on the conclusory allegations that they were "aware" of Dr. Cicerchia's recommendation for an injection and physical therapy and, as to Defendant Martin that he was aware of Defendant LaBonte's response to Plaintiff's grievance – "you claim that the USMS has denied you care, specifically injections of medication and physical therapy. . . . I cannot locate a denial of service from the USMS." ECF No. 3-1, Ex. G2. There is nothing permitting the

---

[6] Plaintiff's joinder of the Rhode Island Attorney General appears to be frivolous in that Plaintiff was charged with federal crimes in a Connecticut federal court and detained by the order of a federal magistrate judge. As an official of the State of Rhode Island, the Attorney General of Rhode Island can have nothing to do with such circumstances. Nor does the pleading contain any facts asserting any actions or omissions by the Rhode Island Attorney General.

9

inference that either Defendant Chau or Defendant Martin was aware that this treatment was medically mandated or had been affirmatively prescribed, as well as no evidence that they knew or should have known that delay in receipt of this treatment would cause a substantial risk of injury, or that either of them took actions or engaged in omissions to "den[y], delay, or interfere[] with" Plaintiff's treatment.  Reaves, 195 F. Supp. 3d at 416 (internal quotation marks omitted).  That is, Plaintiff's pleading is devoid of facts permitting the inference that either of them had "actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented" it.  Zingg, 907 F.3d at 635.  All claims against Defendants Chau and Martin should be dismissed.

That leaves Defendants Blanchette, Fernandes, LaBonte[7] and the Wyatt.  Unlike the other Defendants (except for the Wyatt, which is an institution), all of them appear to have been directly involved with Plaintiff's health care.  For screening as to them, the Court's focus may shift to the first Abernathy prong, the requirement that Plaintiff's complaint must plausibly allege that the seven-month delay of the recommended injection and physical therapy objectively exposed Plaintiff to a substantial risk of serious harm.  Glennie, 2023 WL 2265247, at *11.  Plaintiff's claim stumbles at the threshold because Dr. Cicerchia expressly cabined his recommendation in that he did not order or prescribe the treatment, offered to perform it only if "approved" in advance and did not specify any timing by which such treatment was medically necessary to be provided.  ECF No. 3-1, Ex. F.  Other than the allegation of "constant pain," ECF No. 3-1 ¶ 26, while he was at the Wyatt, the pleading lacks any facts applicable to Plaintiff's

---

[7] I have separately considered whether the allegation that Defendant LaBonte "refused" to transmit Plaintiff's medical record to New York is sufficient to state a viable claim of a constitutional deprivation.  ECF No. 3-1 ¶ 83.  I find that it is not – when this fact is assumed to be true, the claim still fails because the complaint does not allege that Defendant LaBonte's alleged misconduct had any adverse impact on Plaintiff.

condition[8] that a delay until such treatment was approved (as it ultimately was some time prior to or in August 2022) would expose Plaintiff to a substantial risk of serious harm. As to the injection, fatal to Plaintiff's claim that the delay exposed him to a substantial medical risk is his decision to refuse an injection when one was offered in August 2022. I find that this pleading fails plausibly to allege that any of the Defendants who participated in Plaintiff's care is legally responsible for an objectively conscience-shocking delay in providing the recommended injection and physical therapy.

While this is sufficient to dispose of Plaintiff's claims against these Defendants, I pause briefly to consider the second, subjective, prong. In that regard, the pleading establishes that Defendants Blanchette, Fernandez, LaBonte and the Wyatt did not ignore or disregard Plaintiff's shoulder pain in that he received diagnostic procedures (an x-ray and an MRI), treatment (a sling), and an outside medical referral to a surgeon to determine if surgery or other treatment was urgently needed and that the delay related to the need for USMS authorization. There are no facts permitting the inference that these Defendants caused the USMS delay.[9] Accordingly, I do not find that Plaintiff has plausibly alleged that any of these Defendants was deliberately indifferent to his serious medical needs. See, e.g., Jenkins v. Syed, No. 16-cv-694-bbc, 2018 WL

---

[8] As to Dr. Blanchette and Nurse Practitioner Fernandes, the complaint states that each of them were aware of an alleged medical principle (the complaint does not reveal its source) that "cartilage lost bone displacement leading to osteoarthritis and other complications of delayed treatment that would lead to permanent damage of the left shoulder rotator cuff for the lack of the prescribed treatment." Id. ¶¶ 30-31. This medical principle – based on "cartilage lost bone displacement" – does not appear to mesh with Dr. Cicerchia's clinical observations of "incomplete tear of left rotator cuff" and "impingement syndrome," ECF No. 3-1, Ex. F; it seems to clash with Dr. Cicerchia's medical opinion that surgery was not required and that an injection and physical therapy should be performed only after they were "approved." Id. Nor is there any record reference establishing that Plaintiff was ever diagnosed with "cartilage lost bone displacement."

[9] Plaintiff's allegation that Defendant LaBonte failed to "reach out to the USMS . . . as he mentioned he would in his December 28, 2021 memo," ECF No. 3-1 ¶ 62, does not alter this conclusion. The attachment to the pleading makes clear that Defendant LaBonte also informed Plaintiff that it was Plaintiff's responsibility to "utilize the tools to accomplish your desired information gathering." ECF No. 3-1, Ex. G2. Thus, if Defendant LaBonte failed to "reach out," which the Court accepts as true, that is not the cause of USMS's delay in authorizing treatment.

5885941, at *13-14 (W.D. Wis. Nov. 9, 2018) (rejecting constitutional claim at summary judgment based on absence of evidence that seven-month delay in cortisone injection in shoulder was caused by deliberate indifference where evidence did not reflect it was needed at a specific time or that it should have taken precedence over other demands on prison physician), aff'd, 781 F. App'x 543 (7th Cir. 2019); Brown v. Harris, Civil Action No. 05-cv-02203-PAB-BNB, 2009 WL 77464, at *10-11 (D. Colo. Jan. 12, 2009) (dismissal of claim despite seven month delay before steroid injection was authorized followed by five month delay after authorization based on lack of evidence that named defendants disregarded order or otherwise caused delay).

Based on the foregoing, I find that Plaintiff has failed to state a plausible claim that any Defendant deprived him of his constitutional rights and recommend that his complaint should be dismissed at screening, provided that Plaintiff should first be afforded a thirty-day opportunity to amend (again) to add additional plausible facts sufficient to overcome the deficiencies identified above. This recommendation is subject to whether Plaintiff has a mechanism to assert such a claim; this is the question to which I turn next.

### B.     Can Plaintiff Assert Any *Bivens* Causes of Action?

Because it is conceivable that Plaintiff may be able to amend his pleading to state facts that plausibly allege a claim for money damages based on a constitutional violation under color of federal law, I also examine whether Bivens affords him a legally permissible vehicle to proceed and find that it does not.[10]

---

[10] As of this writing, Plaintiff seeks only the remedy of money damages. I note that Plaintiff has asked for a declaration of unconstitutionality, although he is no longer at the Wyatt or in federal custody and does not seek any injunctive remedy. For the Court to issue such a declaration would transgress the Case or Controversy Clause of Article III of the Constitution, which bars federal courts from issuing advisory opinions. See Harris v. Univ. of Massachusetts Lowell, 43 F.4th 187, 192 (1st Cir. 2022) (once plaintiff students graduated/terminated, request for declaratory relief dismissed as moot; such claim amounts to request for unconstitutional advisory opinion unless claimants can show ongoing substantial controversy of sufficient immediacy and reality to warrant issuance of declaratory judgment). Thus, Plaintiff's prayer for a declaration of unconstitutionality – standing alone – does not state a claim that can be asserted in a federal court.

Bivens created a judicially implied cause of action for money damages to remediate certain constitutional deprivations committed by persons acting under color of federal law. González v. Vélez, 864 F.3d 45, 52 (1st Cir. 2017).  It is the federal analog to § 1983, which creates a statutory cause of action that supplies civil remedies for constitutional violations committed by persons acting under color of state law. Lebron v. Naylor, No. CA 12-688-ML, 2012 WL 6600296, at *2 (D.R.I. Dec. 17, 2012).  In recent years, the Supreme Court has repeatedly held that Bivens is a strictly limited and "disfavored" cause of action. Egbert v. Boule, 142 S. Ct. 1793, 1799-1803 (2022) (internal quotation marks omitted). Egbert "caution[s]" that in "most every case" Bivens should *not* be extended, noting, "if . . . called to decide Bivens today, we would decline to discover any implied causes of action in the Constitution." Id. at 1803, 1809 (emphasis added) (internal quotation marks omitted); see Minneci v. Pollard, 565 U.S. 118, 131 (2012) (Scalia, J., concurring) (Bivens is "a relic of the heady days in which this Court assumed common-law powers to create causes of action by constitutional implication") (internal quotation marks omitted).

Mindful of these principles, I begin by focusing on the aspect of Plaintiff's complaint that plainly cannot be asserted under Bivens. Bivens allows for a private right of action for money damages against federal actors only in their individual capacities.  It does not overcome the sovereign immunity that bars suits for money damages against the United States, its agencies or federal officials sued in their official capacities. DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008); Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (Bivens action will not lie against federal official sued in official capacity), abrogated on other grounds, De Aza-Paez v. United States, 343 F.3d 552 (1st Cir. 2003).  With no claims asserted for injunctive relief, all of Plaintiff's official capacity claims are subject to dismissal to the extent that they are based on actions taken under

color of federal law, which is what the complaint alleges.  See Ortega v. United States Customs & Border Prot., ___ F. Supp. 3d ___, Civil Action No. 21-11250-FDS, 2023 WL 2187896, at *7 (D. Mass. Feb. 23, 2023).

As to the balance of Plaintiff's claims for money damages, Egbert directs district courts to take note that pertinent Supreme Court precedent provides for a Bivens private right of action to remedy injury caused by constitutional violations committed by persons acting under color of federal law only in three narrow circumstances.  Drewniak v. U.S. Customs and Border Protection, 554 F. Supp. 3d 348, 353-55 (D.N.H. 2021).  First is Bivens itself, in which the Supreme Court permitted a private right of action for a Fourth Amendment violation after law enforcement officers handcuffed a man in his home in front of his family without a warrant. Bivens, 403 U.S. at 389; see Drewniak, 554 F. Supp. 3d at 353-54.  Second is Davis v. Passman, 442 U.S. 228 (1979), involving Fifth Amendment violations due to sex discrimination. Drewniak, 554 F. Supp. 3d at 354.  Third, and pertinent to this case, is Carlson v. Green, 446 U.S. 14 (1980), in which federal corrections officers were sued for violations of the Due Process Clause and the Eighth Amendment based on their refusal to provide prescribed/essential medical treatment, resulting in death.  Id. at 16 & n.1; Drewniak, 554 F. Supp. 3d at 354.

Pursuant to Egbert, the determination whether a particular constitutional claim may be asserted as a Bivens cause of action requires a two-step analysis.  142 S. Ct. at 1803.  First, the court must analyze whether the claim "arises in a new context or involves a new category of defendants" different from the three circumstances already approved by the Supreme Court. Drewniak, 554 F. Supp. 3d at 355 (internal quotation marks omitted).  If the claim does not involve a new context or a new category of defendants, a Bivens action is available.  Id. at 356. However, if the claim seeks to extend Bivens to a new context or new category of defendants,

14

the court must also consider whether there are "special factors counseling hesitation against expanding Bivens," focused both on separation of powers principles, "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," as well as on the availability of alternative remedies.  Id. at 356, 358, 360 (internal quotation marks omitted); see Egbert, 142 S. Ct. at 1803-04.  As Egbert makes plain, the two steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy, such as when "there are 'potential special factors that previous Bivens cases did not consider.'"  Id. at 1803 (quoting Ziglar v. Abbasi, 582 U. S. 120, 140 (2017)).  Thus, the availability of alternative remedies can make the "'situation altogether different from Bivens.'"  See Arias v. Herzon, __ F. Supp. 3d __, Civil No. 17-cv-516-LM, 2023 WL 4204657, at *3 (D.N.H. June 27, 2023) (quoting Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 73 (2001)).  That is, the existence of an alternative remedial scheme not considered by the Bivens predicate decision (here Carlson) is enough both to place the case into a new context at the first step and to prohibit expanding Bivens at the second.  Id. at *5.

Focusing on the first step, I find that Plaintiff's claim for money damages based on a seven-month delay of recommended physical therapy and a recommended injection (that he later initially refused) against senior federal officials (the Attorney General and the United States Marshal), as well as a private detention facility and its employees/representatives operating under an USMS contract, is contextually materially different from Carlson, which dealt with the deadly denial of medically critical prescribed treatment by federal prison officials.  See Glennie, 2023 WL 2265247, at *13-14 & n.21.  The inapplicability of Bivens as to the Wyatt's representatives is confirmed by the Supreme Court's holding in Minneci, 565 U.S. at 131, that a

15

plaintiff may not bring a Bivens action against the individual employees of a private correctional facility for failing to provide adequate medical care. See Pope v. Geo Group, 18-cv-6900 (BMC)(LB), 2019 WL 79426, at *2 (E.D.N.Y. Jan. 2, 2019) ("Minneci also bars a Bivens claim against a privately employed individual for the inadequate provision of medical care in violation of the Fifth Amendment") (internal quotation marks omitted). And the availability of alternative remedies, such as USMS internal grievance procedures,[11] not considered in Bivens or Carlson, also serves to place this case in a new context. See Arias, 2023 WL 4204657, at *5 (alternative remedial structure for filing misconduct reports against federal agents places case in new Bivens context); McGee v. Bureau of Prisons, Civ. No. CV 23-00190 LEK-KJM, 2023 WL 3467116, at *5 (D. Haw. May 15, 2023) (FBOP's administrative remedy program, which was not considered in Carlson, is another reason why claims arise in new context).

      With the context different, I move to the second step and find that separation of powers considerations and the availability of alternative remedies tip decisively against a Bivens extension for this case. From a separation of powers perspective, Bivens is particularly unsuited to be the vehicle for asserting claims challenging the constitutionality of USMS procedures for approving detainee medical treatment. Glennie, 2023 WL 2265247, at *14-15. In addition, Plaintiff has (or could have had) alternative remedies. These include the USMS internal grievance procedures, as well as potential state law tort claims[12] and any claim Plaintiff might have brought under the Federal Tort Claims Act. Glennie, 2023 WL 2265247, at *15.

---

[11] The USMS internal grievance procedures are described, for example, in Clutts v. Lester, No. 20-CV-80-CJW-KEM, 2023 WL 3901489, at *6 (N.D. Iowa June 8, 2023) (listing cases holding that USMS grievance procedures forecloses extension of Bivens).

[12] Plaintiff has not asserted any state law tort claims, nor does his pleading suggest that he might have viable state law claims for medical malpractice or medical negligence.

Based on the foregoing and guided by Egbert's caution that Bivens should rarely be extended, 142 S. Ct. at 1803, 1809, in the event that Plaintiff succeeds in amending his complaint to state a viable claim for money damages against a defendant acting under color of federal law who has injured him by conduct amounting to a constitutional deprivation, I will recommend that the Court dismiss such pleading unless it fits into the narrow crevice remaining under Bivens after Egbert or otherwise states a viable claim (such as for an injunction that Plaintiff has standing to seek). Ortega, 2023 WL 2187896, at *8 (Bivens money damage claims dismissed but claims for declaratory and injunctive relief to be considered further). For now, I alternatively recommend that Plaintiff's claims should be dismissed because they cannot be asserted under Bivens.

### III.  Conclusion

Based on the foregoing, I recommend that Plaintiff's complaint be dismissed for failing to state a claim, provided that he first be afforded thirty days to file an amended pleading that either states a plausible federal law claim properly based on Bivens or grounded on some other viable federal law mechanism, or that states a state law cause of action over which this Court has subject matter jurisdiction. If Plaintiff fails to file an amended pleading or if the amended pleading still fails to state a claim, I recommend that this case be dismissed with prejudice and the IFP motion be denied as moot.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.

See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 24, 2023